UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT DONAHUE, *et al.*, | ) | CASE NO.:  5:24-cv-01141 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| TRAVELERS COMPANIES, INC., *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

Defendants Travelers Companies, Inc. ("Travelers") and Standard Fire Insurance Co. ("Standard Fire") (collectively "Defendants") move the Court for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c).  (Doc. 19.)  Plaintiffs Robert Donahue and Rebecca Donahue (collectively "Plaintiffs") opposed (Doc. 27), and Defendants replied (Doc. 28).  For the reasons stated herein, Defendants' Motion for a Judgment on the Pleadings is GRANTED in part and DENIED in part.  Rebecca Donahue and Travelers are DISMISSED as parties to the case.

**I.     BACKGROUND**

   **A.     Factual History**

   **1.  Plaintiffs suffer property damage and file an insurance claim with Standard Fire**

On February 28, 2017, a fire damaged the Donahue's home.  At the time, Plaintiffs' home was protected by a Homesaver Policy (the "Policy"), effective on January 10, 2017.  (Doc. 10-1 at 1047.)[1]  The Policy was issued by Standard Fire and, as of March 3, 2017, listed Robert Donahue and his daughter, Kelly Krise, as co-beneficiaries.  (Doc. 10-3 at 1169, 1171.)  The

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

Policy allowed for the payment of the Actual Cash Value ("ACV") of any loss and the subsequent Replacement Cost Value ("RCV") of any covered items. (Doc. 10-4 at 1276.) Standard Fire completed its estimate of Robert Donahue and Kelly Krise's insurance claim in July 2019 and found the fire loss was eligible for ACV and RCV compensation. (Doc. 10-2 at 715-69.) Plaintiffs now allege bad faith in the distribution of both the ACV and RCV funds.

### 2. Lawsuit over the distribution of ACV funds

After the fire, Kelly Krise contested Robert Donahue's rights to the ACV proceeds in a lawsuit filed in the Summit County Court of Common Pleas. Pursuant to court order, Standard Fire placed a check for the ACV of the home in interpleader.[2] (Doc. 10-3 at 1180.) On August 21, 2019, Standard Fire sought to interplead the insurance proceeds. (*Id*. at 1179.) With other documents filed and extensions granted by the court, a cash bond in the full amount of interpleader funds ($141,239.08) was received by the Summit County Clerk of Court on November 23, 2020. (*Id*. at 1182.)

On February 28, 2023, the court determined the ACV proceeds should be divided evenly between Robert Donahue and Kelly Krise. (*Id.* at 1175-76.) Kelly Krise appealed. On May 2, 2023, Kelly Krise dismissed her appeal. *See* Journal Entry, *Krise v. Donahue, et al.*, Summit C.P. No. CV 2019-02-0775 (May 5, 2023).[3] On May 25, 2023, the court issued a *nunc pro tunc*

---

[2] "After conducting an investigation of the fire, including examinations under oath of Defendant Robert Donahue and Plaintiff Kelly Krise, the Standard Fire Insurance Company determined that the property loss was valued at $161,439.08. After subtraction of the $1,000 deductible, the Standard Fire Insurance Company paid $20,200 to be held in escrow for the City of Warren, Ohio, and has deposited $140,239.08 with the Summit County Clerk of Courts pursuant to this Court's Order. (Doc. 10-3 at 1171 (Decision and Judgment, J. Forrest W. Burt).)

[3] All citations to *Krise v. Donahue, et al.*, Summit C.P. No. CV 2019-02-0775 reflect citations to public records that are either appended to the record here or are accessible to the Court and reflect judicial action. *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (finding that a court can take judicial notice of public records "which are not subject to reasonable dispute").

judgment entry noting its Clerk of Court still maintained the $141,239.08 of interpleader funds and modifying the distribution as follows: Kelly Krise to receive $63,619.54 and Robert Donahue to receive $77,619.54.  *See Nunc Pro Tunc* Judgment Entry, *Krise v. Donahue, et al.*, Summit C.P. No. CV 2019-02-0775 (May 25, 2023).  Service by mail occurred the same day.

### 3.  Plaintiffs' request for RCV proceeds from Standard Fire

On May 24, 2023, Robert Donahue first notified Standard Fire of his intent to recover the RCV funds.  (Doc. 10-3 at 1203; Doc. 18 at 1358.)  A general adjuster ("Adjuster") from Travelers responded by explaining the Policy provisions addressing RCV recovery and requested certain documents from Robert Donahue.[4]  (*Id.* at 1194-1212.)  Standard Fire received no response from Robert Donahue.  On October 16, 2023, the Adjuster sent Robert Donahue a second request.  (*Id.* at 1213.)  Robert Donahue later provided these documents, and also submitted a supplemental claim requesting compensation for an outdoor shed and appliances that were allegedly destroyed in the fire.  (Doc. 10-4 at 1233, 1235.)  The Adjuster disputed this claim with Plaintiffs, and the claim was formally denied on March 26, 2024.  (*Id.* at 1261.)

On April 10, 2024, the Adjuster notified Robert Donahue that he must "start the replacement [construction] within a reasonable period of time" and requested confirmation that "the intended replacement of the property is for the same use as prior to the loss."  (*Id.* at 1276.)  Following this request, Plaintiffs commenced the instant action.  (Doc. 1-1 at 6-10.)

### B.  Procedural History

On June 6, 2024, Plaintiffs filed suit against Defendants in the Summit County Court of Common Pleas, alleging a single count of bad faith in the processing of their insurance claim.

---

[4] These documents included: all architectural drawings, the contact information of any contractors, a copy of any signed contract with any contractors, any permits, photographs of work that has been performed, the expected completion date of the construction, and a Sworn Statement in Proof of Loss. (Doc. 10-3 at 1212.)

(*Id.*)  They later amended their Complaint.  (Doc. 10-1.)  In their Amended Complaint, Plaintiffs raise the same bad faith claim, and seek a monetary judgment of $25,000 in damages, in addition to $25,000 in punitive damages, attorneys' fees, and other relief that the Court sees fit.  (*Id.* at 711-13.)  These damages have remained unchanged through Defendants' Complaint and Amended Complaint.  (Doc. 1-1 at 9; Doc. 10-1 at 713.)

On July 8, 2024, Defendants removed the case to this Court.[5]  (Doc. 1 at 1.)  On November 14, 2024, Defendants amended their Answer.  (Doc. 18.)  In their Amended Answer, Defendants denied any bad faith acts and disputed that Plaintiffs "timely cooperated with all demands."  (*Id.* at 1358-59, 1363.)  Defendants further asserted that both Travelers and Rebecca Donahue lack contractual privity and cannot be parties to the instant case.  (*Id.* at 1361-62.)  On November 21, 2024, Defendants jointly moved for judgment on the pleadings.  (Doc. 19.)  In their Motion, Defendants make four arguments:

(1) Plaintiffs' claim for alleged bad faith conduct that purportedly occurred between 2017 and 2023 is time-barred (Doc. 19 at 1385);

(2) the pleadings establish that Standard Fire did not act in bad faith after May 2023 as a matter of law (*id.*); that

(3) Rebecca Donahue lacks the contractual privity to bring the present action and is precluding from asserting otherwise by a binding state court judgment (*id.*); and

(4) Plaintiffs fail to state a legally viable claim against Travelers where this separate and distinct corporate entity was never a party to the insurance contract and cannot be held liable for alleged bad faith as a matter of law.  (*Id.*)

---

[5] Defendants met the amount-in-controversy requirement by including Plaintiffs' RCV insurance claim "in excess of $250,000."  (Doc. 1 at 2-3.)  Both named Plaintiffs are citizens of Ohio.  (Doc. 10-1 at 707.)  Travelers' principal place of business is in Minnesota, and Standard Fire's principal place of business is in Connecticut.  (Doc. 1 at 2.)

## II. LAW AND ANALYSIS

### A. Standard of Review

A motion for judgment on the pleadings "must focus only on the allegations in the pleadings." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 483 (6th Cir. 2020). Such a motion "is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (cleaned up). Courts "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 389 (6th Cir. 2007) (citations omitted). Courts must also "draw all reasonable inferences in [the plaintiff's] favor." *Watkins v. Healy*, 986 F.3d 648, 660 (6th Cir. 2021) (citations omitted). The standard of review for a judgment on the pleadings is also the same as that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Bates*, 958 F.3d at 480.

Where, as here, arguments raised in a motion are unopposed, they are forfeited. *See Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (finding that a failure to oppose arguments raised in a defendant's motion to dismiss is grounds for the forfeiture of claims); *Doe v. Bredsen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (ruling that plaintiff forfeited certain claims by failing to defend them in his brief in opposition to defendant's motion to dismiss). Plaintiffs' Opposition only opposes Defendants' first two challenges. (Doc. 27.) Pages 2 through 21 do not address Rebecca Donahue's lack of standing as a third-party to the Policy or Travelers' denial of contractual privity. (Doc. 27 at 1485-1504.) The Court will nevertheless address all four claims presented in Defendants' Motion.

### B.     Allegations of bad faith between 2017 and 2023

Plaintiffs assert Defendants acted in bad faith continuously since the 2017 fire.  (Doc. 10-1 at 710.)  They plead bad faith as one single episode, while Defendants assert the bad faith allegations pertain to two distinct periods: (1) February 2017 to May 24, 2023, and (2) post-May 24, 2023, acts associated with RCV compensation.  (Doc. 19 at 1385.)

February 2017 to May 2023 is the pleaded timeframe for ACV proceeds.  (Doc. 10-3 at 1180.)  The subsequent dispute between Robert Donahue and Kelly Krise regarding ownership of ACV proceeds led to yearslong litigation that resulted in Standard Fire issuing a check to the Summit County Court of Common Pleas for the ACV amount under interpleader.  This litigation was resolved in February 2023, with Robert Donahue and Kelly Krise each receiving half of the ACV funds.  (*Id.* at 1175-76.)[6]  According to the Policy, RCV proceeds cannot be distributed until work on the property has been completed.[7]  (Doc. 1-1 at 53; Doc. 10-4 at 1276.)  As a result, any bad faith acts occurring between February 2017 and May 2023 involve only the distribution of the ACV funds – which were delayed due to the Summit County case.  And what is more, the timeline pleaded and supplemented by the records demonstrates Standard Fire submitted a full cash bond to the Summit County Clerk of Court on November 23, 2020.  (Doc. 10-3 at 1182.)  This was after filing their petition to file interpleaded funds on August 21, 2019.  (*Id*. at 1179.)

Defendants argue Plaintiffs' bad faith claim for conduct between 2017 and 2023 is time-barred under Ohio R.C. § 2305.09(D).  The Ohio legislature placed a four-year statute of

---

[6] Judgment amended to reflect Kelly Krise received $14,000 Kelly Krise already received.  (Doc. 10-3 at 1175.)

[7] Section I – Conditions, 3.b. (4) of the Policy states: "[w]e will pay no more than the actual cash value of the damage until actual repair or replacement is complete."  (Doc. 1-1 at 53.)

limitations on certain torts, including "[f]or an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code."[8] Ohio R.C. § 2305.09(D) (West 2025). With respect to insurance claims, the tort of bad faith is governed by Ohio R.C. § 2305.09(D).

To avoid statute-of-limitations implications, Plaintiffs allege they "have only discovered the bad faith conduct . . . [of] Defendants in late 2023 and 2024." (Doc. 10-1 at 711.) Unlike other torts, insurance bad faith claims are not subject to the "discovery rule." *See Investors REIT One v. Jacobs*, 546 N.E.2d 206, 211 (Ohio 1989) ("The legislature's express inclusion of a discovery rule for certain torts arising under R.C. 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute."); *Chic Promotions, Inc. v. Jewelers Mut'l Ins. Co.*, No. 1:07-cv-417, 2009 WL 3126454, 2009 U.S. Dist. LEXIS 87930, at *8 (S.D. Ohio Sep. 24, 2009) ("Ohio courts do not apply the discovery rule to bad faith claims."). Rather, this four-year period begins at the time a wrongful act was committed. *Id.* at *7; *see also Collins v. Sotka*, 692 N.E.2d 581, 582 (Ohio 1998) ("Ordinarily, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed.").

If the Court accepts Plaintiffs' assertion that Defendants' bad faith acts began at the start of the insurance claim in February 2017, then the statute of limitations for bad faith expired in February 2021. More generously, Standard Fire completed its investigation and conferred an estimate for the fire loss (both ACV and eligibility for RCV) in July 2019. (Doc. 10-2 at 715-69.) This later date gave Plaintiffs until July 2023 to file the instant case. While it is understandable that Plaintiffs did not file this action at that time—they only requested the RCV funds in May 2023—this fact has no bearing on the statute of limitations under R.C. §

---

[8] None of the additional sections enumerated in R.C. § 2305.09(D) pertain to the tort of bad faith.

2305.09(D).  (Doc. 10-3 at 1194-95.)  Therefore, any alleged bad faith conduct resulting from the February 2017 insurance claim and the July 2019 estimate by Standard Fire is time-barred under R.C. § 2305.09(D).

      C.      **Allegations of bad faith after Plaintiffs' request for RCV proceeds**

In Ohio, an insurance company has a fiduciary duty to act in good faith towards its insured in carrying out its duties under a given contract.  Insurance companies fail to exercise good faith when they refuse to pay a claim without "reasonable justification" in law or fact.  *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994) ("[O]ver the past forty-five years this court has consistently applied the 'reasonable justification' standard to bad faith cases."); *see also Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315 (Ohio 1983) (affirming the use of the reasonable justification standard).  Even if an insurance company believes it was justified in its denial, however, its belief "may not be an arbitrary or capricious one."  *Hart v. Republic Mut. Ins. Co.*, 87 N.E.2d 347, 349 (Ohio 1949).

The conditions imposed by Travelers for the RCV proceeds are subject to *Hart* and *Zoppo*.  Thus, Plaintiffs' bad faith claim turns on whether the subsequent months of negotiations between Plaintiffs and Standard Fire were based on a reasonable justification under *Zoppo*, and, whether Standard Fire's bases for these continued negotiations was arbitrary or capricious.

The Policy states that RCV funds can only be distributed *after* the entire ACV payment has been made.  (Doc. 10-4 at 1276.)  And even then, RCV funds cannot be distributed "until actual repair or replacement is complete."  (Doc. 1-1 at 53.)   At present, Plaintiffs have yet to begin construction.  (Doc. 27 at 1489-90.) ("Plaintiffs made a . . . supplemental demand upon the Defendants for [the RCV money] so that reconstruction of the Premises could commence.")

As pleaded, multiple interactions occurred after May 24, 2023, in which requests for RCV funds were met with further inquiries, requests for documents, and alleged delays.  (Doc.

10-1 at 709-10; Doc. 10-3 at 1194-1212; Doc. 10-4 at 1276.)  "[C]onstru[ing] the complaint in the light most favorable to the plaintiff[s]," there are sufficient allegations that Defendants acted in bad faith in the review of Plaintiffs' RCV claim.  *Roger Miller Music, Inc.*, 477 F.3d at 389 (cleaned up).  For the above reasons, Defendants' request for judgment in their favor on Plaintiffs' bad faith claim for RCV reimbursement is DENIED.

### D. Contractual privity: Rebecca Donahue

Defendants next contend that Rebecca Donahue cannot remain a party to the instant case because she lacks contractual privity with Standard Fire.  This claim is unopposed in Plaintiffs' Opposition (Doc. 27) and thus must be treated as forfeited.  *Notredan*, 531 F. App'x at 569.

Ohio law does not allow third parties to file bad faith insurance claims.  *See Gillette v. Estate of Gillette*, 837 N.E.2d 1283, 1287 (Ohio Ct. App. 2005) ("Given the contractual relationship requirement, Ohio courts have repeatedly held that a third-party claimant cannot assert bad-faith claims against an insurer.").  "[I]n order to assert a bad faith claim, the parties must have a contractual relationship."  *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 517 (6th Cir. 2010).

The record does not show that Rebecca Donahue is in contractual privity with either Standard Fire or Travelers.  In 2010, Robert Donahue purchased the property.  (Doc. 10-3 at 1166.)  The property was titled to his daughter Robyn Warfield and later transferred to Kelly Krise.  (*Id.* at 1166-67.)  In 2017, Kelly Krise purchased the Homesaver Policy, listing Robert Donahue as a co-beneficiary.  (*Id.* at 1169.)  By the time of the fire, Rebecca Donahue was neither listed on the title of the property nor listed as a beneficiary of the Policy.  As such, she has no contractual privity with Defendants.

Regarding Defendants' claim that Rebecca Donahue is precluded from bringing the instant action because of the binding judgment of the Summit County Court of Common Pleas,

the Court need not reach this issue. Because Rebecca Donahue does not have contractual privity to proceed as a Plaintiff, Defendants' motion seeking her dismissal is GRANTED.

E. **Contractual Privity: Travelers**

Lastly, Defendants raise Travelers' lack of contractual privity with Plaintiffs. "Ohio does not provide a claim [] based on the bad faith handling of insurance claims where the parties are not in privity with each other." *The William Powell Co. v. Nat'l Indem. Co.*, 141 F. Supp. 3d 773, 784 (S.D. Ohio 2015); *see also Eastham v. Nationwide Mut. Ins. Co.*, 586 N.E.2d 1131, 1133 (Ohio Ct. App. 1990) ("[W]e believe that liability for bad faith must be strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of the underlying contractual relationship."); *Motorists Mut. Ins. Co. v. Said*, 590 N.E.2d 1228, 1232 (Ohio 1992) ("Rather, the tort of bad faith arises as a consequence of a breach of a duty established by a particular contractual relationship.").

Absent privity, Plaintiffs allege in their Amended Complaint that both Standard Fire and Travelers requested documents from Plaintiffs as co-agents "collectively and in concert." (Doc. 10-1 at 709-10.) However, "Ohio law most strongly points to the conclusion that, absent privity, an insured may not sue a third-party claims administrator for adjusting its claim in bad faith." *The William Powell Co.*, 141 F. Supp. 3d at 782; *Williams v. Travelers Home & Marine Ins. Co.*, 402 F. Supp. 3d 499, 505 (E.D. Wis. 2019) (collecting cases) ("Most other jurisdictions . . . have declined to recognize bad-faith claims against agents, independent adjusters*, and other entities that are not in privity with the insured.*") (emphasis added).

"[W]hen the parent corporation is not a party to the insurance contract, privity is established when the subsidiary's corporate veil is pierced." *Dombroski v. WellPoint, Inc.*, 879 N.E.2d 225, 235 (Ohio Ct. App. 2007), *rev'd on other grounds*, 895 N.E.2d 538 (Ohio 2008); *Dardinger v. Anthem Blue Cross & Blue Shield*, 781 N.E.2d 121, 139 (Ohio 2002) (indicating

that when lack of contractual privity is asserted as a defense by a parent company, privity is established by piercing the corporate veil); *Day v. Golden Rule Ins. Co.*, No. 1:22-cv-590, 2023 WL 5209365, 2023 U.S. Dist. LEXIS 142098, at *7 (S.D. Ohio Aug. 14, 2023) (dismissing alter ego liability claim where argument to pierce corporate veil of parent company was deficient).

To have sufficiently pleaded facts supporting the piercing of the corporate veil, Plaintiffs needed to allege Travelers acted "in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 545 (Ohio 2008).  To be sure, Plaintiffs alleged facts detailing the relationship between Travelers and Standard Fire.  (Doc. 10-1 at 709-10.)  They allege that Travelers and Standard Fire committed bad faith acts "collectively and in concert."  *Id.*  In their Amended Answer, Defendants maintain the two entities are distinct.  (Doc. 17 at 1344, 1351.)  Nonetheless, allegations of fraud, illegality or unlawful conduct are absent from the Amended Complaint.

Plaintiffs attempt to side-step their need to allege facts supporting the plausibility of piercing the corporate veil by simply alleging Standard Fire and Travelers were "co-agents." (Doc. 10-1 at 709-10.)  For support, Plaintiffs cite *Kaplan Trucking Co. v. Grizzly Falls Inc.*, 86 N.E.3d 845 (Ohio Ct. App. 2017).  But *Kaplan* is wholly inapplicable.  In *Kaplan*, the Eighth District Court of Appeals addressed the scope of an agency relationship between an insurer and its broker.  As restated in *Kaplan*, there was a question of fact as to whether the principal conferred authority (actual or apparent) to its alleged agent.  *Id.* at 853-55.  The identification of a principal permitting an agent to act on its behalf is a basic tenet of agency law.  *See* Restatement of the Law 3d, Agency, Section 1.01 (2006) ("A relationship is not one of agency within the common-law definition unless the agent consents to act on behalf of the principal. . . .").  Here, Plaintiffs make no such assertions.  They simply claim Travelers and Standard Fire are

co-agents, but leave the question of who, if either of them, conferred any authority on the other.

Drawing all inferences in Plaintiffs' favor, the Amended Complaint does not allege facts to support either contractual privity, piercing the corporate veil, or an agency relationship. Travelers is hereby DISMISSED from this action.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion for Judgment on the Pleadings (Doc. 19) is GRANTED in part and DENIED in part.  Plaintiff Rebecca Donahue and Defendant Travelers' Companies, Inc. are hereby DISMISSED from the case.  Plaintiff Robert Donahue's bad faith claim against Standard Fire Insurance Co. for conduct relating to RCV reimbursement remains.

**IT IS SO ORDERED.**

**Date:**  October 2, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE